**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| J.P., by and through his Guardian Ad Litem, Shannon Villanueva; SHANNON VILLANUEVA,<br><br>         Plaintiffs-Appellees,<br><br>  v.<br><br>COUNTY OF ALAMEDA; DIANE DAVIS MAAS; SUE MAY,<br><br>         Defendants-Appellants,<br><br>  and<br><br>TRIAD FAMILY SERVICES; MARIA REFUGIO MOORE,<br><br>         Defendants. | No. 18-15963<br><br>D.C. No. 4:17-cv-05679-YGR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted July 17, 2019
San Francisco, California

---

     *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  PAEZ, RAWLINSON, and MURPHY,[**] Circuit Judges.

Diane Maas (Maas), Sue May (May), and the County of Alameda (County, together with Maas and May, the Appellants) appeal the district court's order denying qualified immunity for claims brought pursuant to 42 U.S.C. § 1983 (§ 1983) (1) under the state-created-danger and special-relationship doctrines; and (2) under the First Amendment for familial association.  Our jurisdiction derives from 28 U.S.C. § 1291, and we review the denial of qualified immunity *de novo*. *See Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018).

**1.** The state rarely has an obligation to protect citizens from private harm.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989).  However, there are two exceptions:  (1) "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (state-created danger exception)"; or (2) when a special relationship exists between the plaintiff and the state (special-relationship exception).  *Patel v. Kent School Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2011) (citations and internal quotation marks omitted).

We have held that the "clearly established" special-relationship doctrine

---

[**] The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

applies to children in foster care, creating a duty to provide at least reasonable safety. *Henry A. v. Willden*, 678 F.3d 991, 1000 (9th Cir. 2012). Under this doctrine, a plaintiff must establish: (1) "an objectively substantial risk of harm"; and (2) that a reasonable official would have been compelled to draw an inference "that a substantial risk of serious harm existed." *Id.* at 1001 (citation omitted).

"To determine whether qualified immunity applies in a given case, [courts] must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Shafer v. City of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (citation omitted).

"For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he was doing violates federal law." *Id.* at 1117 (citations omitted).

The state-created danger exception "only applies in situations where the plaintiff was *directly* harmed *by a third party*." *Willden*, 678 F.3d at 1002 (second emphasis in the original). Appellee alleged that the Appellants' failure to remove him from his foster home caused him emotional distress, exposing him to potential harm from drugs. Appellee never alleged any direct harm to him, only to his

3

sibling. Our cases have not recognized a Fourteenth Amendment violation under these two exceptions for emotional distress alone, or for direct harm to another party. *See, e.g.*, *Willden*, 678 F.3d at 998-1003; *see also Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843-47 (9th Cir. 2010). Because no law clearly established that child welfare workers could be liable to a sibling who suffered no direct injury as a result of a state-created danger or special relationship, the defendants were entitled to qualified immunity. *See Shafer*, 868 F.3d at 1117 (holding that qualified immunity applies if no clearly established law exists on the issue); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reiterating that clearly established law must not be defined "at a high level of generality" but "particularized" to the facts of the case).

2. The dissent's reliance on *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) is completely misplaced, as it does not even address foster home placement or sibling relationships. Rather, that case involved the exclusion of women from a fraternal organization. *See id.* at 621-22. Nothing in that case supports the dissent's position that child welfare workers could be liable for indirect injury to a sibling, or the argument that a loss-of-familial-association claim exists for siblings under the First Amendment. As discussed below, our precedent is to the contrary.

No viable loss-of-familial-association claim exists for siblings under

4

the First Amendment. A familial relationship grounds the loss of familial association claims under the First and Fourteenth Amendments. *See Roberts*, 468 U.S. at 618-20. Thus far, that familial relationship has been limited to that between a parent and child. *See Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)*, rev'd on other grounds in Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999). In *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991), *as amended*, we explicitly ruled that siblings do not possess a cognizable liberty interest to assert a loss of familial association claim under the Fourteenth Amendment. No basis exists to disregard this precedent simply because the claim is raised under the First Amendment rather than the Fourteenth Amendment. Notably, the dissent cites no case to that effect.

**REVERSED and REMANDED**.

*J.P. v. Cty. of Alameda*, No. 18-15963

PAEZ, Circuit Judge, dissenting:

I agree in full with the district court's thorough and reasoned analysis of J.P.'s constitutional claims in the order denying defendants' motion to dismiss. *See* Order Granting In Part & Denying In Part County Defendants' Motion to Dismiss (Dkt. 52), *J.P. v. Cty. of Alameda*, No. 17-cv-5679, 2018 WL 1933387 (N.D. Cal. Apr. 24, 2018). For those reasons, and as further explained below, I would affirm.

Ninth Circuit precedent clearly establishes that children "ha[ve] a protected liberty interest in safe foster care placement once they [become] wards of the state." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 847 (9th Cir. 2010). The child welfare workers here were thus well on notice that they had an affirmative obligation to (i) "safeguard [J.P.'s] wellbeing" after he was placed in their custody in foster care, *see id.* at 843; and (ii) not act with deliberate indifference toward a known or obvious risk of danger, *see id.* at 844. They overlooked these obligations when they allowed J.P. and his three-year-old sister to continue living in a foster home even after she had ingested methamphetamine there. *See id.* And, contrary to the majority's position, J.P. *did* allege that he suffered a direct harm, even though he did not personally ingest methamphetamine; he claims that he suffered emotional distress as a result of

1

losing his younger sister when she died from ingesting methamphetamine a second time at that home. *See Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299, 307 (holding that damages awards under section 1983 "may include not only out-of-pocket loss and other monetary harms, but also such injuries such as . . . *mental anguish and suffering*") (emphasis added) (quotation marks omitted); *Harper v. City of L.A.*, 533 F.3d 1010, 1029 (9th Cir. 2008).[1]

I also disagree that it was not clearly established that the First Amendment protects cohabiting siblings from unwarranted government interference in their relationship. As the Supreme Court recognized almost forty years ago, childhood siblings share precisely the "kind[] of highly personal relationship" that warrant a "substantial measure of sanctuary from unjustified interference by the State." *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). "[C]ertain kinds of personal

---

[1] The majority's reliance on *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012) is misplaced. *Willden* did not hold that the state-created danger exception requires a showing that a third party directed harm at the plaintiff. We rejected only the proposition that a state official could escape liability simply by claiming that the danger pre-existed the state action. *See id.* Thus, to incur liability, the state official need not do more than expose the plaintiff to a danger he "would not have otherwise faced." *Id.* at 1002–03; *see also Kennedy v. City of Ridgefield*, 439 F.39 1055, 1061 (9th Cir. 2006). In dicta, we stated: "by its very nature, the doctrine only applies in situations where the plaintiff was directly harmed *by a third party*—a danger that, in every case, could be said to have 'already existed.'" *Willden*, 678 F.3d at 1002. Whether the plaintiff establishes a sufficient showing of harm as a result of the state's created danger is not part of the danger-creation exception analysis. For the reasons provided by the district court, J.P. has made the requisite showing. *See J.P.*, 2018 WL 1933387, at *4.

bonds," such as those built from "cohabit[ing] with one's *relatives*," enjoy constitutional shelter because of the "emotional enrichment" one develops from doing so and the way it enables individuals to "cultivat[e] and transmit[] shared ideals and beliefs." *Id.* at 619–20 (emphasis added). Because defendants interfered with J.P.'s relationship with his sister, however, he can no longer live with his sister, enjoy the emotional enrichment from doing so, or cultivate and transmit shared ideals and beliefs with her. *See id.*

Our decision in *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991), does not compel us to hold otherwise. *Ward* held only that the Fourteenth Amendment right to familial association does not protect a relationship between adult siblings. *See* 967 F.2d at 284. *Ward* did not, however, address the right to intimate familial associations under the First Amendment. Although the majority insists that there is "[n]o basis" to treat the First Amendment claim differently, Maj. Disp. at 5, the rights protected under the First and Fourteenth Amendments are doctrinally distinct and must be examined separately. That is because the Supreme Court and our court have developed different tests under both amendments to determine whether a certain activity or relationship is entitled to constitutional protection. For example, whether an alleged right constitutes a "liberty" interest under the Fourteenth Amendment depends, in part, on the "historic practices of our society, or whether on any other basis it has been

3

accorded special protection." *See Michael H. v. Gerald D.*, 491 U.S. 110, 124 (1989); *see also Rochin v. Cal.*, 342 U.S. 165, 172 (1952) (holding due process right protects against state action that "shocks the conscience"). In *Ward*, we ultimately determined that the right of an adult to associate with an adult sibling was not a substantive due process right.

On the other hand, the First Amendment goes beyond protecting what we deem "historic" or traditional, or against government action that shocks the conscience. It protects "certain intimate human relationships . . . that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (citing *Bd. of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 545 (1987)) (quotation marks omitted). The relationship between two sibling children raised in the same foster home—and the emotional attachments that derive therefrom—would, in my view, certainly fall under the type of intimate relationship protected under First Amendment. I therefore respectfully dissent.